UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PANAMA CITY DIVISION

TONY GARCIA,

    Plaintiff,

v.                                                    Case No. 5:21-cv-226-RH/MJF

WHITE, *et al.*,

    Defendants.
_____/

## REPORT AND RECOMMENDATION

In this section 1983 action, Plaintiff Tony Garcia alleges that Defendants Sabrevia Snell, David Long, and White—correctional officers at the Graceville Correctional Facility—attacked Garcia in his cell because Garcia filed a grievance against White. Garcia also alleges that Defendant K. Matheny failed to provide Garcia with adequate medical care for the injuries he suffered from the attack.

Snell and Long move to dismiss Garcia's First- and Eighth-Amendment claims against them because Garcia failed to exhaust his administrative remedies. Docs. 92, 96. On that same ground, Matheny moves to dismiss the Eighth-Amendment claim of deliberate indifference to a serious medical need that Garcia asserts against her. Doc. 102. Garcia responded in opposition to Snell and Long's motions. Docs. 106, 107. Despite being afforded an opportunity to respond, Garcia did not respond to Matheny's motion to dismiss. *See* Doc. 103. Because Snell, Long,

and Matheny have carried their burden of demonstrating that Garcia failed to exhaust his administrative remedies for his claims against them, the District Court should grant Snell's, Long's, and Matheny's motions to dismiss.

## I. BACKGROUND

Garcia alleges he is "a paraplegic with Stage 4 gastric cancer." Doc. 33 at 5. In May 2018, when Garcia suffered from internal bleeding, correctional officers transported Garcia from Graceville Correctional Facility ("GCF") to Bay Sacred Heart Hospital. *Id.*

During Garcia's hospital stay, White allegedly "pulled his firearm from his holster, pointed it at [Garcia and a nurse] and chambered a round." *Id.* White and Snell then allegedly threatened Garcia "with harm if he told anyone about the incident with the firearm." *Id.*

Garcia allegedly filed with GCF an "emergency grievance" about this incident. *Id.* According to Garcia, the assistant warden at GCF promised that White and Snell "would be kept away from" Garcia. Doc. 33 at 5–6.

But a few days later, on June 2, 2018, White, Snell, and Long approached Garcia in his cell. *Id.* at 6. White allegedly "hit" Garcia "in the back," which knocked Garcia out of his bunk and onto his wheelchair. *Id.* Snell then "got on" Garcia's back and pushed him into the wheelchair while Long grabbed Garcia's left arm and "contort[ed] it palm up." *Id.* White then grabbed Garcia's right arm, "contorted it

out[,] and hit it with his hand, which snapped [Garcia's] elbow." *Id.* Garcia began screaming, "begging for mercy," and "explaining that his elbow was broken." Doc. 33 at 6. Garcia alleges that White nevertheless continued to strike him. *Id.*

Garcia alleges that after this attack, Snell, Long, and White took him to GCF's medical clinic. *Id.* at 15. Garcia alleges that Matheny, a nurse, asked Garcia if he had declared "a medical emergency for his . . . gastric cancer." *Id.* When Garcia responded that he had not called a medical emergency for that reason, Matheny allegedly notified the correctional officers that "she was done" and did not examine or provide medical care for Garcia's elbow. *Id.* Garcia alleges that his elbow "was discolored and swollen to more than three times the size of" his other elbow. *Id.*

Sometime later that same day, Garcia allegedly again told Long and White that he needed medical attention for his elbow and that it was broken. Doc. 33 at 15. White allegedly responded, "That's what snitches get for writing grievances." *Id.* Garcia then allegedly told an unnamed sergeant "about his elbow." *Id.* The unnamed sergeant called a medical emergency. *Id.*

Matheny responded to the medical emergency. *Id.* at 16. Garcia alleges that after describing for Matheny the attack that caused his injury, Matheny gave Garcia a compression bandage and encouraged Garcia to claim that a fall caused the injury. Doc. 33 at 16.

Several weeks later, correctional officers transported Garcia to the "Jackson Hospital" for internal bleeding.[1] *Id.* According to Garcia, Defendant Dr. J. Alvarez told a physician at the Jackson Hospital not to treat Garcia's elbow. *Id.*

Upon his return to GCF, Garcia continued to complain about his elbow. *Id.* Eventually, on a date Garcia does not specify, correctional officers transported Garcia to the Lake Butler Regional Medical Center. *Id.* at 17. Medical personnel obtained an x-ray image of Garcia's elbow. Garcia alleges that the x-ray image showed that his elbow was fractured. Doc. 33 at 17. Medical personnel provided Garcia with an arm brace and pain medication. *Id.*

In his sixth amended complaint, Garcia asserts that Snell and Long violated the Eighth Amendment because they used excessive force when attacking Garcia in his cell. *Id.* at 6. Garcia also asserts that Snell and Long violated the First Amendment because their attack was retaliation for Garcia filing a grievance against White.[2] *Id.* at 5. Garcia further asserts that Matheny violated the Eighth Amendment when she failed to treat adequately Garcia's elbow injury. *Id.* at 15–17.

---

[1] Garcia alleges that before he was transported to Jackson Hospital, he "went on a hunger strike in an attempt to receive treatment for his elbow." Doc. 33 at 16. It is unclear if Garcia's hunger strike and internal bleeding are related, or if the internal bleeding was a result of Garcia's gastric cancer.

[2] In the heading for his First-Amendment retaliation claim, Garcia also mentions "Free Speech." Doc. 33 at 5. It is unclear from Garcia's allegations whether he intended to assert two distinct claims under the First Amendment. Regardless, any

Snell, Long, and Matheny move to dismiss Garcia's claims against them because Garcia failed to exhaust his administrative remedies. Docs. 92, 96, 102.

## II. STANDARD

Under the Prison Litigation Reform Act ("PLRA"), a prisoner may not file a section 1983 action "until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a); *Dimanche v. Brown*, 783 F.3d 1204, 1210 (11th Cir. 2015). Exhaustion of such remedies is a mandatory precondition to suit. *Ross v. Blake*, 578 U.S. 632, 638 (2016); *Jones v. Bock*, 549 U.S. 199, 211 (2007); *Varner v. Shepard*, 11 F.4th 1252, 1258 (11th Cir. 2021).

Furthermore, the PLRA requires "proper exhaustion." *Woodford v. Ngo*, 548 U.S. 81, 93 (2006); *Varner*, 11 F.4th at 1260. "Proper exhaustion 'means using all steps that the agency holds out, and doing so *properly* . . . .'" *Varner*, 11 F.4th at 1260 (quoting *Woodford*, 548 U.S. at 90). The agency, not the PLRA, determines the proper method of exhaustion. *Jones*, 549 U.S. at 218 (noting that inmates must comply with "applicable procedural rules" that are defined "by the prison grievance process itself"); *Woodford*, 548 U.S. at 90 (noting that proper exhaustion "demands compliance with an agency's deadlines and other critical procedural rules").

---

additional First-Amendment claim would be subject to dismissal because Garcia failed to exhaust his administrative remedies for that claim.

The Florida Department of Corrections' ("FDC") grievance procedure is a three-step process: an inmate must (1) file an informal grievance with a designated prison staff member, (2) file a formal grievance at the institutional level with the warden's office, and (3) submit an appeal to the Office of the Secretary (through the Bureau of Policy Management and Inmate Appeals in the FDC's Central Office). Fla. Admin. Code R. 33-103.005 to -103.007; *see Parzyck v. Prison Health Servs., Inc.*, 627 F.3d 1215, 1218 (11th Cir. 2010). Inmates use Form DC6-236 ("Inmate Request form") to file an informal grievance. *Jenkins v. Sloan*, 826 F. App'x 833, 836 (11th Cir. 2020) (citing Fla. Admin. Code R. 33-103.005(1)).

"Informal grievances must be received by the institution within 20 days of when the incident or action being grieved occurred." *Id.* (citing Fla. Admin. Code R. 33-103.011(1)(a)). If the informal grievance is denied, the institution must receive an inmate's formal grievance no later than 15 days from the date of the response to the informal grievance. *Id.* (citing Fla. Admin. Code R. 33-103.011(1)(b)). Finally, an institution must receive an appeal from the denial of a formal grievance within 15 days "from the date the response to the formal grievance is returned to the inmate." Fla. Admin. Code R. 33-103.011(1)(c).

Failure to exhaust administrative remedies is an affirmative defense that the defendant bears the burden of proving. *See Jones*, 549 U.S. at 216; *Varner*, 11 F.4th at 1257. Exhaustion is analyzed in two steps at the motion-to-dismiss stage. First, a

"district court must . . . determine whether the complaint should be dismissed for lack of exhaustion 'tak[ing] the plaintiff's version of the facts as true.'" *Varner*, 11 F.4th at 1258 (quoting *Turner v. Burnside*, 541 F.3d 1077, 1082 (11th Cir. 2008)). Second, if the complaint is not subject to dismissal at the first step, the court must "make specific findings in order to resolve the disputed factual issues related to exhaustion." *Turner*, 541 F.3d at 1082 (citing *Bryant v. Rich*, 530 F.3d 1368, 1373–74, 1376 (11th Cir. 2008)). The court then "decide[s] whether under those findings the plaintiff has exhausted his available administrative remedies." *Varner*, 11 F.4th at 1258 (quoting *Turner*, 541 F.3d at 1082–83).

### III. DISCUSSION

**A.    The Parties' Respective Arguments**

    **1.    *Defendants' Arguments in Favor of Dismissal***

Snell, Long, and Matheny assert that Garcia failed to exhaust his administrative remedies as to Garcia's First- and Eighth-Amendment claims against them. Doc. 92 at 3; Doc. 96 at 3; Doc. 102 at 6–7. In support of their motions, Defendants rely on the following: (1) the declaration of The GEO Group, Inc.'s ("GEO") interim grievance coordinator, Nicholas Bechtel; (2) a copy of Garcia's grievance history; (3) the declaration of Alan McManus, the FDC's Bureau Chief of Policy Management and Inmate Appeals; and (4) a copy of Garcia's informal

grievance filed on June 19, 2018. *See* Doc. 38-1; Doc. 80-1; Doc. 92 at 3; Doc. 96 at 3; Doc. 102 at 6–7; Doc. 109-1 at 1.

**The Declaration of Nicholas Bechtel:** According to GEO's interim grievance coordinator, Nicholas Bechtel:

- the only grievance Garcia filed in June 2018 was related to medical issues. Doc. 38-1 at 1.

- Garcia "did not timely file any informal grievances regarding any alleged excessive force or deliberate indifference to excessive force occurring on June 2, 2018." *Id.*

- Garcia filed with the FDC only six appeals of grievances, all of which related to "either ADA or mail access issues." *Id.*

**Garcia's Grievance History:** Attached to Bechtel's declaration is a copy of Garcia's grievance history as of November 22, 2022. Doc. 38-1 at 2–4. Garcia's grievance history reflects that he filed an informal grievance on June 19, 2018, and that the FDC "returned" that grievance on June 29, 2018. *Id.* at 2. The grievance received a "class code" for "General Medical (Medical)." *Id.*

Garcia's grievance history also confirms Bechtel's statement that Garcia has filed with the FDC only six appeals of grievances. *Id.* at 4. According to the grievance history, Garcia did not appeal the disposition of any grievance filed in

June 2018. Indeed, the earliest appeal in Garcia's history is from November 2021, *more than three years after* Garcia filed his informal grievance of June 19, 2018.

**Declaration of Alan McManus:** According to Alan McManus—the FDC's Bureau Chief of Policy Management and Inmate Appeals—between May 1, 2018 and August 31, 2018, Garcia filed only one grievance. Doc. 80-1 at 1.

**Garcia's Grievance of June 19, 2018:** In his grievance of June 19, 2018, Garcia alleged that on June 18, 2018, he began a "hunger strike" because he had not received medical treatment for his broken elbow. He also stated that he would continue his hunger strike until he received medical treatment. Doc. 109-1; *see* Doc. 80-1 at 2 (redacted version). Garcia also mentioned that on June 2, 2018, "Sgt. White broke [his] elbow." Doc. 109-1; Doc. 80-1 at 2 (redacted version).

Garcia filed this informal grievance on an Inmate Request form, and he marked "Medical" and "Medical Director" as the recipients of his grievance. Doc. 109-1. The grievance was returned to Garcia because, according to the FDC, it was "not a grievance." *Id.* Garcia did not appeal the FDC's decision. *See* Doc. 38-1 at 4.

### 2. *Garcia's Responses to Defendants' Motions to Dismiss*

In his responses in opposition to Snell's and Long's motions to dismiss, Garcia contends:

> [My] property was collected up when [I] was taken to the Hospital and/or confinement, some of the times collected by some of the

> Defendants in 2018. [I] was not afforded the opportunity to obtain back all of [my] property on more than one occasion due to the Defendants throwing some of [my] property away.
>
> . . .
>
> [I] put all [my] grievances in the institutions locked grevance box that the institution controls, that [I] ha[d] no control to what is done or not done with the grievances wance they are droped into the grevance box.

Doc. 106 at 1–2 (errors in original); Doc. 107 at 1–2 (same). Garcia also contends, however, that he fully exhausted his administrative remedies as to his claims against Snell and Long. Doc. 106 at 1; Doc. 107 at 1. As noted above, Garcia did not respond in opposition to Matheny's motion to dismiss.

**B.**   <u>Garcia's Claims Survive Step One of *Turner*</u>

As noted above, at step one of *Turner*'s analysis a "district court must . . . determine whether the complaint should be dismissed for lack of exhaustion 'tak[ing] the plaintiff's version of the facts as true.'" *Varner*, 11 F.4th at 1258 (quoting *Turner*, 541 F.3d at 1082). "The court should dismiss if the facts as stated by the prisoner show a failure to exhaust." *Whatley v. Warden, Ware State Prison*, 802 F.3d 1205, 1209 (11th Cir. 2015).

In his sixth amended complaint, Garcia alleges that he "filed grievances in regards to the reprisal, and abuse by the officers, and in regards to the pain and inadequate treatment of his elbow." Doc. 33 at 16 (errors in original). Additionally, in his responses in opposition, Garcia contends that he fully exhausted his

administrative remedies as to his claims against Snell and Long. Doc. 106 at 1–2; Doc. 107 at 1–2.

Although Garcia's allegation in his sixth amended complaint is vague, it does not "show a failure to exhaust" as to Matheny. *Whatley*, 802 F.3d at 1209. Additionally, Garcia affirmatively alleges that he exhausted his administrative remedies for his claims against Snell and Long. Accordingly, Defendants are not entitled to dismissal at step one of *Turner*'s analysis. *See Varner*, 11 F.4th at 1258 (quoting *Turner*, 541 F.3d at 1082).

## C.  Garcia's Claims Should be Dismissed at Step Two of *Turner*

As noted above, the parties dispute whether Garcia exhausted his administrative remedies. At *Turner*'s second step, a court must "make specific findings in order to resolve the disputed factual issues related to exhaustion." *Turner*, 541 F.3d at 1082 (citing *Bryant*, 530 F.3d at 1373–74, 1376). The district court then "decide[s] whether under those findings the plaintiff has exhausted his available administrative remedies." *Varner*, 11 F.4th at 1258 (quoting *Turner*, 541 F.3d at 1082–83).

According to Bechtel's declaration, McManus's declaration, and Garcia's grievance history, Garcia filed only one informal grievance between May 1, 2018 and August 31, 2018, namely the grievance Garcia filed on June 19, 2018. Doc. 38-1 at 1–2; Doc. 80-1 at 1–2; Doc. 109. Additionally, these documents indicate that

Garcia did not appeal the FDC's decision to return the informal grievance to Garcia. Doc. 38-1 at 4.

Despite having multiple opportunities to do so, Garcia did not provide to the District Court:

- copies of any of the grievances or appeals he allegedly filed to exhaust his administrative remedies regarding his claims against Snell, Long, and Matheny;
- the dates on which he allegedly filed the grievances or appeals; and
- the dates on which he allegedly received responses to his grievances and appeals.

Instead, Garcia offers only conclusory allegations that he exhausted his administrative remedies; that "some of the times . . . some of the Defendants" threw away "some of his property"; and that he had no control over his grievances after he deposited them in the locked grievance box at GCF. Doc. 106 at 1–2; Doc. 107 at 1–2. Additionally, although Garcia contends—without any evidentiary support—that the FDC mishandled his grievances generally, Garcia does not contend that any of this alleged misconduct or lack of control over his grievances directly affected any of Garcia's grievances or appeals relevant to this action.

Garcia's conclusory allegations are insufficient at step two of the *Turner* analysis to overcome Defendants' evidence that Garcia did not exhaust his

administrative remedies as to Snell, Long, and Matheny. *See Jenkins v. Sloan*, 826 F. App'x 833, 836–37, 839 (11th Cir. 2020) (noting that in response to a motion to dismiss, the plaintiff "clearly asserted that the grievance process was unavailable to him" and provided dates for, and described with "specific details," alleged misconduct that made the grievance process unavailable); *Nail v. Collado*, No. 15-23036-CIV-Moreno, 2019 WL 1034186, at *4 (S.D. Fla. Mar. 4, 2019) (holding that a plaintiff's "conclusory assertion" that the filing of a grievance was beyond his control was outweighed by the defendants' affidavit and the plaintiff's grievance history indicating that the plaintiff did not file a grievance); *see also Whatley*, 802 F.3d at 1213 (noting that the plaintiff alleged dates on which he attempted to exhaust his administrative remedies and provided exhibits in support of his allegations).

Based on the allegations in Garcia's sixth amended complaint, the dearth of information in Garcia's responses in opposition to Snell's and Long's motions to dismiss, Bechtel's declaration, McManus's declaration, and Garcia's grievance history, the undersigned makes the following factual findings[3]:

1.    Garcia filed only one grievance between May 1, 2018 and August 31, 2018, namely the grievance of June 19, 2018. Doc. 80-1 at 1; *see* Doc. 38-1 at 2.

---

[3] A court "may resolve material questions of fact based on submitted papers only 'in the absence of a timely request for an evidentiary hearing.'" *McIlwain v. Burnside*, 830 F. App'x 606, 610 (11th Cir. 2020) (quoting *Bryant*, 530 F.3d at 1377 n.16). Because no party has requested an evidentiary hearing, the undersigned makes these factual findings without an evidentiary hearing.

2. On June 19, 2018, Garcia filed his informal grievance on an "Inmate Request" form, which addressed the alleged lack of medical treatment Garcia received for his elbow.[4] Doc. 80-1 at 2; Doc. 109-1.

3. In his grievance of June 19, Garcia stated only the following:

> On 6-18-18, I started a hunger strike no food, no milk, no juice ect. The camras will show if they dont write it down. I need medical treatment. On 6-2-18 Sgt. White broke my elbow, Im in bad pain I need to go to the hospital to get my arm & elbow set back in place.
>
> Im not eating until I get the right medical attention for my arm & elbow. I filled out sick-calls/medical request ect.
>
> Ive wrote my family letting them know that I was starting a food strike on 6-18-18 Im just trying to get help an the right medical help its been 16 day now with my arm & elbow.
>
> Inmate (Signature): *Tony Garcia*        DC#: W54977

Doc. 109-1 (errors in original).

---

[4] On May 27, 2023, in response to Dr. Alvarez's motion to seal Garcia's informal grievance dated June 19, 2018, Garcia asserted for the first time that he did not author the informal grievance of June 19, 2018. Doc. 114. Garcia did not previously raise this argument in response to any of the five motions to dismiss that have been filed in this action, all of which rely on the informal grievance. *See* Docs. 52, 106, 107, 111, 112. Furthermore, this assertion does not help Garcia's case. Assuming momentarily that Garcia is being truthful, then there is *no evidence that Garcia took any steps to exhaust his administrative remedies* regarding Snell, Long, and Matheny. Thus, whether Garcia authored the grievance of June 19, 2018 or not, Defendants are entitled to dismissal of Garcia's claims against them because of Garcia's failure to exhaust his administrative remedies.

4. On June 29, 2018, a prison official at GCF returned to Garcia his June 19, 2018 informal grievance without having approved or denied the relief Garcia requested. *Id.*

5. Garcia did not file within the time period required by Rule 33-103.011(1) of the Florida Administrative Code a formal grievance or an appeal related to his June 19, 2018 informal grievance. Doc. 38-1 at 4.

6. Garcia's failure to exhaust fully his administrative remedies for his claims against Snell, Long, and Matheny was not the result of correctional officers at GCF mishandling or disposing of Garcia's grievances or appeals.

Based on these findings, the undersigned concludes that Garcia did not exhaust his administrative remedies for his First- and Eighth-Amendment claims against Snell, Long, and Matheny. Thus, Snell, Long, and Matheny are entitled to dismissal at *Turner*'s second step.

### IV. Conclusion

Snell, Long, and Matheny have carried their burden of demonstrating that Garcia failed to exhaust his administrative remedies for his First- and Eighth-Amendment claims against them. The undersigned respectfully **RECOMMENDS**, therefore, that the District Court:

1. **GRANT** Defendants Sabrevia Snell's, David Long's, and K. Matheny's respective motions to dismiss. Docs. 92, 96, 102.

2. **DISMISS** Plaintiff Tony Garcia's First- and Eighth-Amendment claims against Defendants Sabrevia Snell and David Long.

3. **DISMISS** Plaintiff Tony Garcia's Eighth-Amendment claim against Defendant K. Matheny.

At Pensacola, Florida, this <u>6th</u> day of June, 2023.

/s/ *Michael J. Frank*
**Michael J. Frank**
**United States Magistrate Judge**

## NOTICE TO THE PARTIES

**The District Court referred this case to the undersigned to address preliminary matters and to make recommendations regarding dispositive matters.** *See* **N.D. Fla. Loc. R. 72.2;** *see also* **28 U.S.C. § 636(b); Fed. R. Civ. P. 72(b). Objections to these proposed findings and recommendations must be filed within fourteen (14) days of the date of the report and recommendation. <u>Any different deadline that may appear on the electronic docket is for the court's internal use only and does not control.</u> An objecting party must serve a copy of its objections upon all other parties. A party who fails to object to the magistrate judge's findings or recommendations contained in a report and recommendation waives the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions.** *See* **11th Cir. Rule 3-1; 28 U.S.C. § 636.**