UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PANAMA CITY DIVISION

TONY GARCIA,

    Plaintiff,

v().                                Case No. 5:21-cv-226-RH/MJF

KENDRICK WHITE and
DR. JORGE ALVAREZ,

    Defendants.
_____/

## REPORT AND RECOMMENDATION

Defendant Kendrick White moves to dismiss Plaintiff Tony Garcia's First-Amendment retaliation claim and his Eighth-Amendment excessive force claim because Garcia failed to exhaust his administrative remedies. Doc. 126. Garcia filed a response. Doc. 129. The District Court should grant White's motion to dismiss because Garcia has failed to exhaust his administrative remedies.

### I. BACKGROUND

**A.**   **Garcia's Factual Allegations**

Garcia commenced this section 1983 action when he was a prisoner in the custody of the Florida Department of Corrections ("FDC"). *See* Doc.

1 at 24, 26. Garcia is "a paraplegic with Stage 4 gastric cancer." Doc. 33 at 5.

### 1. *White Threatens Garcia with a Firearm*

In May 2018—Garcia does not specify the precise date—when Garcia suffered from internal bleeding, correctional officers transported Garcia from the Graceville Correctional Facility ("GCF") to Bay Sacred Heart Hospital. *Id.* According to Garcia, during Garcia's hospital stay, White "pulled his firearm from [his] holster, pointed it" at Garcia and a nurse, and chambered a round. *Id.* White threatened Garcia "with harm" if he told anyone about this incident. *Id.* Garcia does not specify the date that this occurred.

### 2. *Garcia's Alleged Grievance*

After Garcia returned to GCF, he allegedly filed an "emergency grievance." *Id.* Plaintiff does not specify the date on which he filed this grievance. There is no evidence—other than Garcia's verified sixth amended complaint—that Garcia ever filed this grievance.

### 3. *White's Alleged Retaliation*

On June 2, 2018, White and two other correctional officers—Sabrevia Snell and David Long—approached Garcia in his cell. Doc. 33

at 6. White allegedly "hit" Garcia "in the back," which knocked Garcia out of his bunk and onto his wheelchair. *Id.* Snell then "got on" Garcia's back and pushed him into the wheelchair while Long grabbed Garcia's left arm and "contort[ed] it palm up." *Id.* White then grabbed Garcia's right arm, "contorted it out[,] and hit it with his hand, which snapped [Garcia's] elbow." *Id.* Garcia began screaming, "begging for mercy," and "explaining that his elbow was broken." *Id.* White nevertheless continued to strike Garcia. *Id.*

### 4. *Garcia's Attempts to Obtain Medical Treatment*

After this attack, White, Snell, and Long took Garcia to GCF's medical clinic. Doc. 33 at 15. Matheny, a nurse, asked Garcia if he had declared "a medical emergency for his . . . gastric cancer . . . ." *Id.* When Garcia responded that he was not seeing a nurse for his cancer, Matheny notified the correctional officers that "she was done" and did not examine or provide medical care for Garcia's elbow. *Id.*

Sometime later that same day, Garcia again told Long and White that he needed medical attention because his elbow was broken. *Id.* White purportedly responded, that's "what snitches get for writing grievances." *Id.* An unnamed sergeant, however, arranged for Matheny

to examine Garcia. *Id.* at 15–16. After describing for Matheny the attack that caused his injury, Matheny gave Garcia a compression bandage. Doc. 33 at 16.

### 5.  *Garcia's Hunger Strike*

On or about June 18, 2018, Garcia began "a hunger strike in an attempt to receive treatment for his elbow." *Id.* at 16; Doc. 109-1.

### 6.  *Garcia's Grievance of June 19, 2018*

On June 19, 2018, Garcia filed an informal grievance. Doc. 109-1; *see* Doc. 80-1 at 2 (redacted version). In it he alleged that on June 18, 2018, he began a "hunger strike" because he had not received medical treatment for his broken elbow. Doc. 109-1; *see* Doc. 80-1 at 2 (redacted version). He also stated that he would continue his hunger strike until he received medical treatment. Doc. 109-1; *see* Doc. 80-1 at 2 (redacted version).

Garcia also mentioned in this grievance that on June 2, 2018, "Sgt[.] White broke [his] elbow . . . ." Doc. 109-1; Doc. 80-1 at 2 (redacted version). On or about June 29, 2018, the FDC returned the grievance to Garcia because, according to the FDC, it was "not a grievance." Doc. 109-

1; Doc. 38-1 at 4. Garcia did not appeal the FDC's decision. *See* Doc. 38-1 at 4.

### 7. *Treatment at Jackson Hospital*

Several weeks after Plaintiff started his hunger strike, correctional officers transported Garcia to the "Jackson Hospital" for internal bleeding. Doc. 33 at 16. Defendant Dr. Jorge Alvarez told a physician at the Jackson Hospital not to treat Garcia's elbow. *Id.*[1]

### 8. *Treatment at Lake Butler Regional Medical Center*

On a date Garcia does not specify, correctional officers transported Garcia to the Lake Butler Regional Medical Center. *Id.* at 17. Medical personnel obtained an x-ray image of Garcia's elbow and this showed that Garcia's elbow indeed was fractured. *Id.* Medical personnel provided Garcia with an arm brace and pain medication. *Id.*

## B. The Procedural History

### 1. *Garcia's Claims in His Sixth Amended Complaint*

In his sixth amended complaint, Garcia asserted that White, Snell, and Long violated the Eighth Amendment because they used excessive

---

[1] Garcia's claim against Dr. Alvarez—deliberate indifference to a serious medical need—remains pending. Dr. Alvarez did not move for summary judgment and the deadline for Dr. Alverez to do so expired in May 2023.

force when attacking Garcia in his cell. Doc. 33 at 6. Garcia also asserted that White, Snell, and Long violated the First Amendment because their attack was in retaliation for Garcia filing a grievance against White. *Id.* at 5.

### 2. *The District Court Dismissed Garcia's Claims Against Snell and Long for Failure to Exhaust Administrative Remedies*

In April 2023, Snell and Long filed motions to dismiss Garcia's First- and Eighth-Amendment claims because Garcia failed to exhaust his administrative remedies. Doc. 92; Doc. 96. The undersigned recommended that the District Court dismiss Garcia's First- and Eighth-Amendment claims against Snell and Long because Garcia failed to exhaust his administrative remedies. Doc. 115. On July 15, 2023, the District Court adopted the undersigned's report and recommendation and dismissed Garcia's claims against Snell and Long. Doc. 118.

### 3. *Defendant White's Pending Motion to Dismiss*

On October 12, 2023, White moved to dismiss Garcia's claims because Garcia failed to exhaust his administrative remedies. Doc. 126. In support of his motion, White relies solely on the District Court's prior finding that Garcia's First-Amendment retaliation claims and his

Eighth-Amendment excessive force claims against other GCF Defendants are barred by the PLRA.

### 4. *Garcia's Response to White's Motion to Dismiss*

Garcia's response to White's motion to dismiss is nearly identical to his responses to Snell's and Long's motions to dismiss. *Compare* Doc. 129, *with* Docs. 106, 107. In light of the similarities, the undersigned's analysis below tracks the analysis of the prior report and recommendation dated June 6, 2023, which was adopted by the District Court. Doc. 115; Doc. 118.

## II. STANDARD

Under the Prison Litigation Reform Act ("PLRA"), a prisoner may not file a section 1983 action "until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a); *Dimanche v. Brown*, 783 F.3d 1204, 1210 (11th Cir. 2015). Exhaustion of such remedies is a mandatory precondition to suit. *Ross v. Blake*, 578 U.S. 632, 638 (2016); *Jones v. Bock*, 549 U.S. 199, 211 (2007). The PLRA requires "proper exhaustion." *Woodford v. Ngo*, 548 U.S. 81, 93 (2006); *Varner v. Shepard*, 11 F.4th 1252, 1260 (11th Cir. 2021). "Proper exhaustion 'means using all steps that the agency holds out, and doing so *properly* . . . .'" *Varner*,

11 F.4th at 1260 (quoting *Woodford*, 548 U.S. at 90). The agency, not the PLRA, determines the proper method of exhaustion. *Jones*, 549 U.S. at 218; *Woodford*, 548 U.S. at 90.

The FDC's grievance procedure is a three-step process: an inmate must (1) file an informal grievance with a designated prison staff member, (2) file a formal grievance at the institutional level with the warden's office, and (3) submit an appeal to the Office of the Secretary (through the Bureau of Policy Management and Inmate Appeals in the FDC's Central Office). Fla. Admin. Code r. 33-103.005 to -103.007; *see Parzyck v. Prison Health Servs., Inc.*, 627 F.3d 1215, 1218 (11th Cir. 2010). Inmates use Form DC6-236 ("Inmate Request form") to file an informal grievance. *Jenkins v. Sloan*, 826 F. App'x 833, 836 (11th Cir. 2020) (per curiam) (citing Fla. Admin. Code r. 33-103.005(2)).

"Informal grievances must be received by the institution within 20 days of when the incident or action being grieved occurred." *Id.* (citing Fla. Admin. Code r. 33-103.011(1)(a)). If the informal grievance is denied, the institution must receive an inmate's formal grievance no later than 15 days from the date of the response to the informal grievance. *Id.* (citing Fla. Admin. Code r. 33-103.011(1)(b)). Finally, an institution must

receive an appeal from the denial of a formal grievance within 15 days "from the date the response to the formal grievance is returned to the inmate." Fla. Admin. Code r. 33-103.011(1)(c).

Failure to exhaust administrative remedies is an affirmative defense that the defendant bears the burden of proving. *See Jones*, 549 U.S. at 216; *Varner*, 11 F.4th at 1257. Exhaustion is analyzed in two steps. First, a district court must determine whether the complaint should be dismissed for lack of exhaustion while taking the plaintiff's version of the facts as true. *Varner*, 11 F.4th at 1258. Second, if the complaint is not subject to dismissal at the first step, the court must "make specific findings in order to resolve the disputed factual issues related to exhaustion." *Turner v. Burnside*, 541 F.3d 1077, 1082 (11th Cir. 2008). The court then decides whether the plaintiff exhausted his administrative remedies. *Varner*, 11 F.4th at 1258.

### III. DISCUSSION

#### A.   The Parties' Respective Arguments

##### 1.   *White's Arguments*

In support of his motion, White offers no evidence of his own. *See* Doc. 126. Instead, he relies on the evidence submitted by Snell and Long,

which includes: (1) the declaration of Nicholas Bechtel—The GEO Group, Inc.'s ("GEO") interim grievance coordinator; (2) a copy of Garcia's grievance history; (3) the declaration of Alan McManus—the FDC's Bureau Chief of Policy Management and Inmate Appeals; and (4) a copy of Garcia's informal grievance filed on June 19, 2018. *See* Doc. 38-1; Doc. 80-1; Doc. 92 at 3; Doc. 96 at 3; Doc. 102 at 6–7; Doc. 109-1 at 1.

**The Declaration of Nicholas Bechtel:** According to GEO's interim grievance coordinator, Nicholas Bechtel:

- the only grievance Garcia filed in June 2018 was related to medical issues. Doc. 38-1 at 1.

- Garcia "did not timely file any informal grievances regarding any alleged excessive force or deliberate indifference to excessive force occurring on June 2, 2018." *Id.*

- Garcia filed with the FDC only six appeals of grievances, all of which related to "either ADA or mail access issues." *Id.*

**Garcia's Grievance History:** Attached to Bechtel's declaration is a copy of Garcia's grievance history as of November 22, 2022. Doc. 38-1 at 2–4. Garcia's grievance history reflects that he filed an informal grievance on June 19, 2018, and that the FDC "returned" that grievance on June 29, 2018. *Id.* at 2. The grievance received a "class code" for "General Medical (Medical)." *Id.*

Garcia's grievance history also confirms Bechtel's statement that Garcia had filed with the FDC only six appeals of grievances. *Id.* at 4. According to the grievance history, Garcia did not appeal the disposition of any grievance filed in June 2018—the month that White allegedly retaliated against Garcia. Indeed, the earliest appeal in Garcia's history is from November 2021, *more than three years after* Garcia filed his informal grievance on June 19, 2018.

**The Declaration of Alan McManus:** According to Alan McManus—the FDC's Bureau Chief of Policy Management and Inmate Appeals—between May 1, 2018, and August 31, 2018, Garcia filed only one grievance, namely on June 19, 2018. Doc. 80-1 at 1.

**Garcia's Grievance of June 19, 2018:** As noted above, in his grievance of June 19, 2018, Garcia alleged that he had begun a "hunger strike" because he had not received medical treatment for his broken elbow. Garcia also stated that he would continue his hunger strike until he received medical treatment. Doc. 109-1; *see* Doc. 80-1 at 2 (redacted version). Garcia also mentioned that on June 2, 2018, "Sgt[.] White broke [his] elbow . . . ." Doc. 109-1; Doc. 80-1 at 2 (redacted version).

Garcia filed this informal grievance on an Inmate Request form, and he marked "Medical" and "Medical Director" as the recipients of his grievance. Doc. 109-1. The FDC returned Garcia's grievance because, according to the FDC, it was "not a grievance." *Id.* Garcia did not appeal the FDC's decision. *See* Doc. 38-1 at 4.

2. ***Garcia's Response to White's Motion to Dismiss***

In his response to White's motion to dismiss, Garcia avers under penalty of perjury that:

- he fully exhausted his administrative remedies (at both the institutional level and on appeal to the FDC Secretary);
- he put all of his grievances in the GCF locked grievance box;
- White sometimes threw away "some" of Garcia's property;
- White prevented Garcia from securing his property; and
- the FDC mishandled Garcia's grievances generally.

Doc. 129 at 1–3, 6.

In the undersigned's prior report and recommendation regarding Garcia's claims against Long and Snell, the undersigned explained that "Garcia's conclusory allegations are insufficient at step two of the *Turner* analysis to overcome [Long and Snell's] evidence that Garcia did not exhaust his administrative remedies . . . ." Doc. 115 at 12–13. Despite the

District Court's adoption of the undersigned's report and recommendation and the dismissal of Garcia's claims against Long and Snell for failure to exhaust administrative remedies, Garcia failed to provide any evidence that he properly grieved his retaliation and excessive force claims against White.

## B. Garcia's Claims Survive Step One of *Turner*

As noted above, at step one of *Turner*'s analysis, a "district court must . . . determine whether the complaint should be dismissed for lack of exhaustion 'tak[ing] the plaintiff's version of the facts as true.'" *Varner*, 11 F.4th at 1258 (quoting *Turner*, 541 F.3d at 1082). "The court should dismiss if the facts as stated by the prisoner show a failure to exhaust." *Whatley v. Warden, Ware State Prison*, 802 F.3d 1205, 1209 (11th Cir. 2015).

In his sixth amended complaint, Garcia alleges that he "filed grievances in regards to the reprisal, and abuse by the officers, and in regards to the pain and inadequate treatment of his elbow." Doc. 33 at 16 (errors in original). Additionally, in his responses in opposition to White's motion to dismiss, Garcia contends that he fully exhausted his administrative remedies as to his claims against White. Doc. 129 at 2.

Furthermore, Garcia asserts that White threw away "some of [Garcia's] property," which the undersigned will assume for the purpose of this analysis includes some of Garcia's grievances. *Id.* at 1. In light of Garcia's allegations that he properly exhausted his administrative remedies, and that White threw away some of Garcia's property, White is not entitled to dismissal at step one of *Turner*'s analysis. *See Varner*, 11 F.4th at 1258 (quoting *Turner*, 541 F.3d at 1082).

C.  **Garcia's Claims Should be Dismissed at Step Two of *Turner***

At *Turner*'s second step, a court must "make specific findings in order to resolve the disputed factual issues related to exhaustion." *Turner*, 541 F.3d at 1082. The district court then "decide[s] whether under those findings the [plaintiff] has exhausted his available administrative remedies." *Varner*, 11 F.4th at 1258 (quoting *Turner*, 541 F.3d at 1082–83).

According to Bechtel's declaration, McManus's declaration, and Garcia's grievance history, Garcia filed only one informal grievance between May 1, 2018, and August 31, 2018, namely the grievance Garcia filed on June 19, 2018. Doc. 38-1 at 1–2; Doc. 80-1 at 1–2; Doc. 109. Additionally, these documents indicate that Garcia did not appeal the

FDC's decision to return the informal grievance to Garcia. Doc. 38-1 at 4. Indeed, Garcia does not specifically allege—much less establish—that he appealed this decision.

Despite having multiple opportunities to do so, Garcia did not provide to the District Court:

- copies of any of the grievances or appeals that exhausted his administrative remedies regarding his claims against White;

- the dates on which he allegedly filed his grievances or appeals—other than his grievance of June 19, 2018; and

- the dates on which he allegedly received responses to any grievances and appeals.

Garcia offers only conclusory allegations that he exhausted his administrative remedies and that he had no control over his grievances after he deposited them in the locked grievance box at GCF. Doc. 129 at 2. Garcia does not specifically contend that any misconduct by White or the FDC prevented him from filing or appealing grievances relevant to his claims against White.

Garcia's conclusory allegations are insufficient at step two of the *Turner* analysis to overcome Defendants' evidence that Garcia did not exhaust his administrative remedies as to White. *See Jenkins*, 826 F. App'x at 836–37, 839; *Nail v. Collado*, No. 15-23036-CIV-Moreno, 2019

WL 1034186, at *4 (S.D. Fla. Mar. 4, 2019); *see also Whatley*, 802 F.3d at 1213.

Based on the allegations in Garcia's sixth amended complaint, the dearth of information in Garcia's response in opposition to White's motion to dismiss, Bechtel's declaration, McManus's declaration, and Garcia's grievance history, the undersigned makes the following factual findings:

1. Garcia filed only one grievance between May 1, 2018, and August 31, 2018, namely, the grievance he filed on June 19, 2018. Doc. 80-1 at 1; *see* Doc. 38-1 at 2.

2. On June 19, 2018, Garcia filed his informal grievance on an "Inmate Request" form, which addressed the alleged lack of medical treatment Garcia received for his elbow.[2] Doc. 109-1; Doc. 80-1 at 2.

3. In his grievance of June 19, Garcia stated only the following:

---

[2] On May 27, 2023, in response to Dr. Alvarez's motion to seal Garcia's informal grievance dated June 19, 2018, Garcia asserted for the first time that he did not author the informal grievance of June 19, 2018. Doc. 114. Garcia never previously denied authorship when he responded to five separate motions to dismiss, all of which relied on this informal grievance. *See* Docs. 52, 106, 107, 111, 112. Furthermore, this denial of authorship does not help Garcia. Assuming momentarily that Garcia is being truthful, there would be *no evidence that Garcia took any steps to exhaust his administrative remedies* regarding White. Thus, whether Garcia authored the grievance of June 19, 2018 or not, Garcia failed to exhaust his administrative remedies with respect to White.

> On 6-18-18, I started a hunger strike no food, no milk, no juice ect. The camras will show if they dont write it down. I need medical treatment. On 6-2-18 Sgt. White broke my elbow, Im in bad pain I need to go to the hospital to get my arm & elbow set back in place.
>
> Im not eating until I get the right medical attention for my arm & elbow. I filled out sick-calls/medical request ect.
>
> Ive wrote my family letting them know that I was starting a food strike on 6-18-18 Im just trying to get help an the right medical help its been 16 day now with my arm & elbow.
>
> Inmate (Signature): *Tony Garcia*          DC#: W54977

Doc. 109-1 (errors in original).

    4.    On June 29, 2018, a prison official at GCF returned to Garcia his June 19, 2018 informal grievance without having approved or denied the relief Garcia requested. *Id.*

    5.    Garcia did not file within the time period required by Rule 33-103.011(1) of the Florida Administrative Code a formal grievance or an appeal related to his June 19, 2018, informal grievance. Doc. 38-1 at 4.

    6.    Garcia's failure to exhaust fully his administrative remedies was not the result of correctional officers mishandling or disposing of Garcia's grievances or appeals.

Based on these findings,[3] the undersigned concludes that Garcia did not exhaust his administrative remedies for his First- and Eighth-Amendment claims against White. Thus, Garcia's claims against White should be dismissed at *Turner*'s second step.

## IV. CONCLUSION

White has carried his burden of demonstrating that Garcia failed to exhaust the available administrative remedies for his First- and Eighth-Amendment claims against White. The undersigned, therefore, respectfully **RECOMMENDS** that the District Court:

1. **GRANT** Defendant Kendrick White's motion to dismiss, Doc. 126.

2. **DISMISS** Plaintiff Tony Garcia's First- and Eighth-Amendment claims against Defendant Kendrick White.

3. **DIRECT** Garcia and Defendant Dr. Alvarez to submit pretrial documents on Plaintiff's sole remaining claim against Dr. Alvarez.

---

[3] In the absence of a timely request for an evidentiary hearing, a court may resolve material questions of fact based on submitted papers. *McIlwain v. Burnside,* 830 F. App'x 606, 610 (11th Cir. 2020) (per curiam). Neither Garcia nor White requested an evidentiary hearing.

At Pensacola, Florida, this 23rd day of January, 2024.

/s/ *Michael J. Frank*
**Michael J. Frank**
**United States Magistrate Judge**

### NOTICE TO THE PARTIES

**The District Court referred this case to the undersigned to address preliminary matters and to make recommendations regarding dispositive matters.** *See* **N.D. Fla. Loc. R. 72.2;** *see also* **28 U.S.C. § 636(b); Fed. R. Civ. P. 72(b). Objections to these proposed findings and recommendations must be filed within fourteen (14) days of the date of the report and recommendation. Any different deadline that may appear on the electronic docket is for the court's internal use only and does not control. An objecting party must serve a copy of its objections upon all other parties. A party who fails to object to the magistrate judge's findings or recommendations contained in a report and recommendation waives the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions.** *See* **11th Cir. Rule 3-1; 28 U.S.C. § 636.**