UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PANAMA CITY DIVISION

TONY GARCIA,

    Plaintiff,

v.   Case No. 5:21-cv-226-RH/MJF

DR. JORGE ALVAREZ,

    Defendant.
    _____/

## REPORT AND RECOMMENDATION

Defendant Dr. Jorge Alvarez moves for summary judgment because Plaintiff Tony Garcia failed to exhaust his administrative remedies regarding his Eighth-Amendment deliberate indifference claim. Doc. 138. Garcia filed a response. Doc. 141. Because Garcia indeed has failed to exhaust his administrative remedies, the District Court should grant Alvarez's motion for summary judgment.

### I. BACKGROUND

### A. Facts From the Summary Judgment Record

Garcia commenced this section 1983 action when he was a prisoner in the custody of the Florida Department of Corrections ("FDC"). *See* Doc.

1 at 24, 26. Garcia is "a paraplegic with Stage 4 gastric cancer." Doc. 33 at 5.

### 1. *A Correctional Officer Fractures Garcia's Elbow*

On June 2, 2018, Correctional Officers Kendrick White, Sabrevia Snell, and David Long approached Garcia in his cell. *Id.* at 6. White allegedly "hit" Garcia "in the back," which knocked Garcia out of his bunk and onto his wheelchair. *Id.* Snell then "got on" Garcia's back and pushed him into the wheelchair while Long grabbed Garcia's left arm and "contort[ed] it palm up." *Id.* White then grabbed Garcia's right arm, "contorted it out[,] and hit it with his hand, which snapped [Garcia's] elbow." *Id.* Garcia began "begging for mercy," and "explaining that his elbow was broken." Doc. 33 at 6. White nevertheless continued to strike Garcia. *Id.*

### 2. *Attempt to Obtain Treatment from Nurse Matheny*

After this attack, White, Snell, and Long took Garcia to the GCF's medical clinic. *Id.* at 15. Karon Matheny, a nurse, asked Garcia if he had declared "a medical emergency for his . . . gastric cancer . . . ." *Id.* When Garcia responded that he was not there regarding his cancer, Matheny

notified the correctional officers that "she was done" and did not examine or provide medical care for Garcia's elbow. *Id.*

Sometime later that same day, Garcia again told Long and White that he needed medical attention because his elbow was broken. Doc. 33 at 15. White purportedly responded, that's "what snitches get for writing grievances." *Id.* An unnamed sergeant, however, arranged for Matheny to examine Garcia. *Id.* at 15–16. After describing for Matheny the attack that caused his injury, Matheny gave Garcia a compression bandage. *Id.* at 16.

### 3. *Garcia's Attempt to Obtain Treatment from Alvarez*

Garcia contiuned to complain about his elbow. On a date not specified by Garcia, Alvarez examined Garcia. *Id.* Garcia showed Alvarez his elbow, which was discolored and extremely swollen. Alvarez did not order an x-ray image or any other diagnostic tests. Alvarez merely instructed Plaintiff to avoid moving his elbow.

### 4. *Garcia's Hunger Strike*

On or about June 18, 2018, Garcia began "a hunger strike in an attempt to receive treatment for his elbow." Doc. 33 at 16; Doc. 109-1.

### 5. *Garcia's Grievance of June 19, 2018*

On June 19, 2018, Garcia filed an informal grievance. Doc. 109-1; *see* Doc. 80-1 at 2 (redacted version). In this grievance, Garcia alleged that on June 18, 2018, he began a "hunger strike" because nobody had treated his broken elbow. Doc. 109-1; *see* Doc. 80-1 at 2 (redacted version). Garcia also stated that he would continue his hunger strike until he received treatment. Doc. 109-1; *see* Doc. 80-1 at 2 (redacted version).

Garcia also mentioned in this grievance that on June 2, 2018, "Sgt[.] White broke [his] elbow . . . ." Doc. 109-1; Doc. 80-1 at 2 (redacted version). On or about June 29, 2018, the FDC returned the grievance to Garcia because, according to the FDC, it was "not a grievance." Doc. 109-1; Doc. 38-1 at 4. Garcia did not appeal the FDC's decision. *See* Doc. 38-1 at 4.

### 6. *Treatment at Jackson Hospital*

Several weeks after Plaintiff started his hunger strike, correctional officers transported Garcia to the "Jackson Hospital" for internal bleeding. Doc. 33 at 16. Alvarez purportedly told a physician at the Jackson Hospital not to treat Garcia's elbow. *Id.*

### 7. *Treatment at Lake Butler Regional Medical Center*

On a date Garcia does not specify, correctional officers transported Garcia to the Lake Butler Regional Medical Center. *Id.* at 17. Medical personnel obtained an x-ray image of Garcia's elbow, and this showed that Garcia's elbow indeed was fractured. *Id.* Medical personnel provided Garcia with an arm brace and pain medication. *Id.*

## B. The Procedural History

In his sixth amended complaint, Garcia asserts that Alvarez violated the Eighth Amendment because Alvarez refused to treat Garcia's broken elbow. Doc. 33 at 6.

### 1. *The Prior Decisions Regarding Exhaustion*

Between November 2022 and October 2023, five former Defendants filed motions to dismiss Garcia's claims because Garcia failed to exhaust his administrative remedies prior to commencing this civil action. Doc. 38; Doc. 92; Doc. 96; Doc. 102; Doc. 126. Because Garcia had failed to exhaust his administrative remedies, the District Court granted the respective motions to dismiss Garcia's First- and Eighth-Amendment claims against Cloud, Snell, Long, Matheny, and White. Doc. 91 (Cloud); Doc. 118 (Snell, Long, and Matheny); Doc. 140 (White).

### 2. *Alvarez's Pending Motion for Summary Judgment*

On February 20, 2024, Alvarez moved to dismiss Garcia's Eighth-Amendment claim because Garcia failed to exhaust his administrative remedies. Doc. 138. In support of his motion, Alvarez relies on the same evidence adduced by the former Defendants and the District Court's prior findings regarding Garcia's exhaustion efforts.

### 3. *Garcia's Response to Alvarez's Motion for Summary Judgment*

In response to Alvarez's motion, Garcia asserts that "if it wasn't for Defendants inference of the evidence (grievances) making it impossible for Plaintiff to produce such grievances" he would have produced them. Doc. 141 at 1 (errors in original). Garcia also cites cases for the propositions that (1) when a party engages in spoliation of evidence, the court can sanction that party by allowing the jury to draw an adverse inference against the party, (2) "threats of substantial retaliation" can render the administrative procedure unavailable, and (3) an inmate does not need to file grievances when there is a breakdown in the grievance process. Doc. 141 at 2–3. Garcia, however, does not demonstrate how these propositions are relevant to his case.

## II. DISCUSSION

### A. The PLRA Requires Exhaustion

Under the Prison Litigation Reform Act ("PLRA"), a prisoner may not file a section 1983 action "until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a); *Dimanche v. Brown*, 783 F.3d 1204, 1210 (11th Cir. 2015). Exhaustion of such remedies is a mandatory precondition to suit. *Ross v. Blake*, 578 U.S. 632, 638 (2016); *Jones v. Bock*, 549 U.S. 199, 211 (2007). The PLRA requires "proper exhaustion." *Woodford v. Ngo*, 548 U.S. 81, 93 (2006); *Varner v. Shepard*, 11 F.4th 1252, 1260 (11th Cir. 2021). "Proper exhaustion 'means using all steps that the agency holds out, and doing so *properly* . . . .'" *Varner*, 11 F.4th at 1260 (quoting *Woodford*, 548 U.S. at 90). The agency, not the PLRA, determines the proper method of exhaustion. *Jones*, 549 U.S. at 218; *Woodford*, 548 U.S. at 90.

The defense of failure to properly exhaust available administrative remedies under the PLRA is treated as a matter in abatement. *Turner v. Burnside*, 541 F.3d 1077, 1082 (11th Cir. 2008); *Bryant v. Rich,* 530 F.3d 1368, 1373–74 (11th Cir. 2008). *A* motion for summary judgment based on the failure to exhaust administrative remedies is analyzed as a motion

to dismiss rather than as a motion for summary judgment. *Bryant*, 530 F.3d at 1374–75. Failure to exhaust administrative remedies is an affirmative defense that the defendant bears the burden of proving. *See Jones*, 549 U.S. at 216; *Varner*, 11 F.4th at 1257.

Exhaustion is analyzed in two steps. First, a district court must determine whether the complaint should be dismissed for lack of exhaustion while taking the plaintiff's version of the facts as true. *Varner*, 11 F.4th at 1258. Second, if the complaint is not subject to dismissal at the first step, the court must "make specific findings in order to resolve the disputed factual issues related to exhaustion." *Turner*, 541 F.3d at 1082. The court then decides whether the plaintiff exhausted his administrative remedies. *Varner*, 11 F.4th at 1258.

**B.    The FDC's Grievance Procedure**

The FDC's grievance procedure is a three-step process: an inmate must (1) file an informal grievance with a designated prison staff member, (2) file a formal grievance at the institutional level with the warden's office, and (3) submit an appeal to the Office of the Secretary (through the Bureau of Policy Management and Inmate Appeals in the FDC's Central Office). Fla. Admin. Code r. 33-103.005 to -103.007; *see*

*Parzyck v. Prison Health Servs., Inc.*, 627 F.3d 1215, 1218 (11th Cir. 2010). Inmates use Form DC6-236 ("Inmate Request form") to file an informal grievance. *Jenkins v. Sloan*, 826 F. App'x 833, 836 (11th Cir. 2020) (per curiam) (citing Fla. Admin. Code r. 33-103.005(2)).

"Informal grievances must be received by the institution within 20 days of when the incident or action being grieved occurred." *Id.* (citing Fla. Admin. Code r. 33-103.011(1)(a)). If the informal grievance is denied, the institution must receive an inmate's formal grievance no later than 15 days from the date of the response to the informal grievance. *Id.* (citing Fla. Admin. Code r. 33-103.011(1)(b)). Finally, an institution must receive an appeal from the denial of a formal grievance within 15 days "from the date the response to the formal grievance is returned to the inmate." Fla. Admin. Code r. 33-103.011(1)(c).

C.   **The Parties' Respective Arguments**

    1.   *Alvarez's Arguments/Evidence*

In support of his motion, Alvarez relies on (1) the declaration of Nicholas Bechtel—The GEO Group, Inc.'s ("GEO") interim grievance coordinator, Doc. 38-1 at 1; (2) a copy of Garcia's grievance history, *id.* at 2–4; (3) the declaration of Alan McManus—the FDC's Bureau Chief of

Policy Management and Inmate Appeals, Doc. 80-1 at 1; (4) a copy of Garcia's informal grievance filed on June 19, 2018, Doc. 109-1 at 1; and (5) the District Court's prior rulings on Garcia's exhaustion efforts.

**The Declaration of Nicholas Bechtel:** According to GEO's interim grievance coordinator, Nicholas Bechtel:

- the only grievance Garcia filed in June 2018 was related to medical issues. Doc. 38-1 at 1.

- Garcia "did not timely file any informal grievances regarding any alleged excessive force or deliberate indifference to excessive force occurring on June 2, 2018." *Id.*

- Garcia filed with the FDC only six appeals of grievances, all of which related to "either ADA or mail access issues." *Id.*

**Garcia's Grievance History:** Attached to Bechtel's declaration is a copy of Garcia's grievance history as of November 22, 2022. Doc. 38-1 at 2–4. Garcia's grievance history reflects that he filed an informal grievance on June 19, 2018, and that the FDC "returned" that grievance on June 29, 2018. *Id.* at 2. The grievance received a "class code" for "General Medical (Medical)." *Id.*

Garcia's grievance history also confirms Bechtel's statement that Garcia had filed with the FDC only six appeals of grievances. *Id.* at 4. According to the grievance history, Garcia did not appeal the disposition

of any grievance filed in June 2018—the month that Alvarez allegedly refused to provide Garcia with appropriate medical treatment. Indeed, the earliest appeal in Garcia's history is from November 2021, *more than three years after* Garcia filed his informal grievance on June 19, 2018.

**The Declaration of Alan McManus:** According to Alan McManus—the FDC's Bureau Chief of Policy Management and Inmate Appeals—between May 1, 2018, and August 31, 2018, Garcia filed only one grievance, namely on June 19, 2018. Doc. 80-1 at 1.

**Garcia's Grievance of June 19, 2018:** As noted above, in his grievance of June 19, 2018, Garcia alleged that he had begun a "hunger strike" because he had not received medical treatment for his broken elbow. Doc. 109-1 at 1. Garcia also stated that he would continue his hunger strike until he received medical treatment. Garcia also mentioned that on June 2, 2018, "Sgt[.] White broke [his] elbow . . . ." *Id.*

Garcia filed this informal grievance on a DC6-236 Inmate Request form, and he marked "Medical" and "Medical Director" as the recipients of his grievance. *Id.* The FDC returned Garcia's grievance because, according to the FDC, it was "not a grievance." *Id.* Garcia did not appeal the FDC's decision. *See* Doc. 38-1 at 4.

### 2. *Garcia's Response to Alvarez's Motion for Summary Judgment*

In response to Alvarez's motion for summary judgment, Garcia contends:

- he fully exhausted his administrative remedies (at both the institutional level and on appeal to the FDC Secretary);

- "if it wasn't for Defendants inference of the evidence (grievances) making it impossible for Plaintiff to produce such grievances."

Doc. 141 at 1 (errors in original); Doc. 33 at 16.

### D. Garcia's Claims Survive Step One of *Turner*

In his sixth amended complaint, Garcia alleges that he "filed grievances in regards to the reprisal, and abuse by the officers, and in regards to the pain and inadequate treatment of his elbow." Doc. 33 at 16 (errors in original). Furthermore, Garcia asserts—albeit it in a conclusory fashion—that prison officials interfered with the grievance process. Doc. 141 at 1. Because of Garcia's allegations, Alvarez is not entitled to dismissal at step one of *Turner*'s analysis. *See Varner*, 11 F.4th at 1258.

### E. Garcia's Claims Should be Dismissed at Step Two of *Turner*

At *Turner*'s second step, a court must "make specific findings in order to resolve the disputed factual issues related to exhaustion."

*Turner*, 541 F.3d at 1082. The district court then "decide[s] whether under those findings the [plaintiff] has exhausted his available administrative remedies." *Varner*, 11 F.4th at 1258 (quoting *Turner*, 541 F.3d at 1082–83).

According to Bechtel's declaration, McManus's declaration, and Garcia's grievance history, Garcia filed only one informal grievance between May 1, 2018, and August 31, 2018, namely the grievance Garcia filed on June 19, 2018. Doc. 38-1 at 1–2; Doc. 80-1 at 1–2; Doc. 109-1. Additionally, Bechtel's declaration, McManus's declaration, and Garcia's grievance history indicates that Garcia did not appeal the FDC's decision to return the informal grievance to Garcia. Doc. 38-1 at 4. Indeed, Garcia does not specifically allege—much less establish—that he appealed this decision.

Despite having multiple opportunities to do so, Garcia did not provide to the District Court:

- copies of any of the grievances or appeals that exhausted his administrative remedies regarding his claims against Alvarez;

- the dates on which he allegedly filed his grievances or appeals—other than his grievance of June 19, 2018;

- the dates on which he allegedly received responses to any grievances and appeals;

Page 13 of 18

- the name of any prison officials who interfered with Garcia's efforts to file grievances;

- facts regarding how prison officials purportedly interfered with Garcia's grievance efforts;

- the name of any prison officials who threatened Garcia;

- the specific threats made by the unidentified prison officials; and

- the date when these unidentified individuals threatened Garcia.

In sum, Garcia offers only conclusory allegations that he exhausted his administrative remedies and that there was interference by prison officials. Doc. 141 at 1. Garcia does not specifically contend that any misconduct by Alvarez or the FDC prevented him from filing or appealing grievances relevant to his claims against Alvarez.

Garcia's conclusory allegations are insufficient at step two of the *Turner* analysis to overcome Alvarez's evidence that Garcia did not exhaust his administrative remedies. *See Jenkins*, 826 F. App'x at 836–37, 839; *Nail v. Collado*, No. 15-23036-CIV-Moreno, 2019 WL 1034186, at *4 (S.D. Fla. Mar. 4, 2019); *see also Whatley v. Warden, Ware State Prison*, 802 F.3d 1205, 1213 (11th Cir. 2015).

Based on the allegations in Garcia's sixth amended complaint, the dearth of information in Garcia's response in opposition to Alvarez's motion for summary judgment, Bechtel's and McManus's declarations, and Garcia's grievance history, the undersigned makes the following factual findings:

1. Garcia filed only one grievance between May 1, 2018, and August 31, 2018, namely, the grievance he filed on June 19, 2018. Doc. 80-1 at 1; *see* Doc. 38-1 at 2.

2. On June 19, 2018, Garcia filed his informal grievance on an "Inmate Request" form, which addressed the alleged lack of medical treatment Garcia received for his elbow.[1] Doc. 109-1; Doc. 80-1 at 2.

3. In his grievance of June 19, Garcia stated only the following:

> On 6-18-18, I started a hunger strike no food, no milk, no juice ect. The camras will show if they dont write it down. I need

---

[1] On May 27, 2023, in response to Alvarez's motion to seal Garcia's informal grievance dated June 19, 2018, Garcia asserted for the first time that he did not author the informal grievance of June 19, 2018. Doc. 114. Garcia never previously denied authorship when he responded to five separate motions to dismiss, all of which relied on this informal grievance. *See* Docs. 52, 106, 107, 111, 112. Furthermore, this denial of authorship does not help Garcia. Assuming momentarily that Garcia is being truthful, there would be *no evidence that Garcia took any steps to exhaust his administrative remedies* regarding Alvarez. Thus, whether Garcia authored the grievance of June 19, 2018 or not, Garcia failed to exhaust his administrative remedies with respect to Alvarez.

> medical treatment. On 6-2-18 Sgt White broke my elbow, Im in bad pain I need to go to the hospital to get my arm & elbow set back in place.
>
> Im not eating until I get the right medical attention for my arm & elbow. I filled out sick-calls/medical request ect.
>
> Ive wrote my family letting them know that I was starting a food strike on 6-18-18 Im just trying to get help an the right medical help its been 16 day now with my arm & elbow.
>
> Inmate (Signature): *Tony Garcia*       DC#: W54977

Doc. 109-1 (errors in original).

    4.    On June 29, 2018, a prison official at GCF returned to Garcia his June 19, 2018 informal grievance without having approved or denied the relief Garcia requested. *Id.*

    5.    Garcia did not file within the period required by Rule 33-103.011(1) of the Florida Administrative Code a formal grievance or an appeal related to his June 19, 2018, informal grievance. Doc. 38-1 at 4.

    6.    Garcia's failure to exhaust his administrative remedies was not a result of correctional officers threatening Plaintiff.

    7.    Garcia's failure to exhaust his administrative remedies was not the result of correctional officers mishandling or disposing of Garcia's grievances or appeals.

Based on these findings, the undersigned concludes that Garcia did not exhaust his administrative remedies regarding his Eighth-Amendment claim against Alvarez. Thus, Garcia's claims against Alvarez should be dismissed at *Turner*'s second step.

### III. CONCLUSION

Alvarez has carried his burden of demonstrating that Garcia failed to exhaust the available administrative remedies for his Eighth-Amendment claims against Alvarez. The undersigned, therefore, respectfully **RECOMMENDS** that the District Court:

1. **GRANT** Defendant Jorge Alvarez's motion for summary judgment. Doc. 138.

2. **DISMISS** Plaintiff Tony Garcia's Eighth-Amendment claims against Defendant Jorge Alvarez.

3. **DIRECT** the clerk of the court to enter judgment and close the case.

At Pensacola, Florida, this 9th day of April, 2024.

/s/ *Michael J. Frank*
**Michael J. Frank**
**United States Magistrate Judge**

## NOTICE TO THE PARTIES

**The District Court referred this case to the undersigned to make recommendations regarding dispositive matters.** *See* **N.D. Fla. Loc. R. 72.2;** *see also* **28 U.S.C. § 636(b); Fed. R. Civ. P. 72(b). Objections to these proposed findings and recommendations must be filed within fourteen (14) days of the date of the report and recommendation.** <u>**Any different deadline that may appear on the electronic docket is for the court's internal use only and does not control.**</u> **An objecting party must serve a copy of its objections upon all other parties. A party who fails to object to the magistrate judge's findings or recommendations contained in a report and recommendation waives the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions.** *See* **11th Cir. Rule 3-1; 28 U.S.C. § 636.**